UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CATHERINE WILLIAMS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE AGENCY, INC., <br><br> Defendant. | Civil Action No. 3:13–CV–549 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant The Agency, Inc.'s ("Defendant" or "The Agency") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). For the reasons stated below, the Court GRANTS the Motion as to Counts I and II of Plaintiffs' Complaint and DENIES the Motion as to Counts III, IV, and V.

I.   **FACTUAL BACKGROUND**

Catherine Williams ("Williams") owns a residence located at 313 Third Street, Colonial Beach, Virginia. On or about July 27, 2012, Brady Kelly O'Hanlon ("O'Hanlon") retained The Agency to conduct surveillance on Williams. O'Hanlon and Williams were then married but separated. O'Hanlon had previously executed a settlement agreement ("Settlement Agreement") with Williams in which he agreed that Williams would be "free from the authority or control . . . [of O'Hanlon] . . . as if . . . she . . . were unmarried." (Compl. Ex. 3). The Settlement Agreement further provided that O'Hanlon would not "molest or interfere" with Williams. (*Id.*) Notwithstanding these contractual provisions, on or about July 27, 2012, O'Hanlon hired The Agency to conduct surveillance on Williams.

William Cline ("Cline") was an employee of The Agency. On August 8, 2012, The Agency ordered Cline to conduct surveillance on Williams. On August 8, 2012, at or about 8:00 p.m., Cline arrived at Williams's house and began to conduct surveillance. Cline contacted The Agency prior to 10:12 p.m. and told them that he could not see Williams inside of her house. Upon receiving that report from Cline, The Agency told Cline to go around to the back of Williams's house and videotape inside the house through a window. Cline then left his car, which was parked on a public street, and walked onto Williams's property. Cline then walked around to the back of Williams's house in order to attain a visual sight line into Williams's living room. Between 10:12 p.m. and 10:39 p.m. on August 8, 2012, Cline videotaped Williams and Gregg Alvin Marsh ("Marsh") having a sexual encounter inside of Williams's house. The Agency subsequently distributed the resulting video and related field report to O'Hanlon.

## II. PROCEDURAL BACKGROUND

Plaintiffs Williams and Marsh filed suit in this Court on August 16, 2013 seeking civil damages against The Agency. Under Counts I and II of the Complaint, Plaintiffs claim that The Agency, under a theory of *respondeat superior*, violated Virginia Code § 19.2-59. Under Count III, Plaintiffs claim that The Agency, under a theory of *respondeat superior*, trespassed upon Williams's property. Under Counts IV and V, Plaintiffs claim that The Agency, under a theory of *respondeat superior*, intentionally inflicted emotional distress upon Williams and Marsh. Williams requests $30,000,000.00 in compensatory damages. Marsh requests $20,000,000.00 in compensatory damages. Further, Williams demands $1,050,000.00 in punitive damages and Marsh demands $700,000.00 in punitive damages. Lastly, Plaintiffs request an award of litigation costs and attorneys' fees.

Defendant filed a Motion to Dismiss on October 15, 2013. Defendant moves the Court to Dismiss Counts I, II, IV, and V of the Complaint. Defendant represents that it has timely filed an Answer with respect to Count III. Plaintiffs filed their Opposition to Defendant's Motion to Dismiss on October 28, 2013. Defendant decided to forgo filing a Reply.

Williams is a resident, domiciliary, and citizen of the Commonwealth of Virginia. Marsh is a resident, domiciliary, and citizen of the Commonwealth of Virginia. The Agency is a corporation formed under the laws of the State of Maryland. The Agency, Inc.'s principal place of business is 8639-B, 16th Street, No. 299, Silver Spring, Maryland.

### III.   ANALYSIS
#### A.  Legal Standard

A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must therefore accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). The Court may consider the complaint, its attachments, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see id*. at 555 n.3. The Court need not accept legal conclusions presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### B. Counts I and II

Section 19.2-59 provides, in part:

> No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer. Any officer or other person searching any place, thing or person otherwise than by virtue of and under a search warrant, shall be guilty of malfeasance in office. Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages. Any officer found guilty of a second offense under this section shall, upon conviction thereof, immediately forfeit his office, and such finding shall be deemed to create a vacancy in such office to be filled according to law.

Va. Code § 19.2-59. Despite Plaintiffs' characterization, The Agency is a private company and there is no support in Virginia law suggesting otherwise. The Supreme Court of Virginia has definitively precluded parties from bringing actions against private parties under section 19.2-59:

> [W]e conclude that Code § 19.2–59 does not create a cause of action against a private entity or an individual. Considered as a whole, the statutory language demonstrates a legislative intent to deter the conduct of only those individuals who, by virtue of their governmental employment, can be found guilty of malfeasance in office.

4

*Buonocore v. Chesapeake & Potomac Tel. Co. of Va.*, 492 S.E.2d 439, 441 (Va. 1997). Accordingly, Plaintiffs are precluded from bringing a private cause of action under section 19.2–59 against The Agency.

### C. Counts IV and V

In order to successfully bring a a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must satisfy four elements of proof. "The plaintiff must show that 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Supervalu, Inc., et al. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008). "[T]he tort of intentional infliction of emotional distress is 'not favored' in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical." *Id.* "Plaintiffs' IIED claim must meet the pleading standard found in the Federal Rules, rather than the heightened standard required by Virginia state courts." *Nelson v. Green*, No. 3:06-CV-00070, 2013 WL 4202225, at *14 (W.D. Va. Aug. 15, 2013).

#### i. Intent

The element of intent requires that plaintiffs engage in conduct for the specific purpose of causing emotional distress to the victim. *See Almy v. Grisham,* 639 S.E.2d 182, 187 (Va. 2007). An individual may also inflict emotional distress recklessly if he takes an action without regard to the risk of causing emotional distress to a victim when he knew or could have been expected to know of the risk. *See Delk v. Columbia/HCA Healthcare Corp.,* 523 S.E.2d 826, 833 (Va. 2000).

Plaintiffs do not allege any facts supporting a theory that Cline and, thus, The Agency acted with the intent to cause emotional distress. However, Plaintiffs have sufficiently alleged that Cline and, thus, The Agency "knew or should have known" that recording a video of Marsh and Williams having sexual intercourse and then subsequently disseminating the video to Williams's estranged husband would cause emotional disturbance to the Plaintiffs. *See Sanford v. Virginia*, No. 3:08-CV-835, 2009 WL 2447959, at *2-3 (E.D. Va. July 28, 2009). The recklessness of Cline's and The Agency's actions is supported because the possible emotional impact of discovering that one has been secretly taped having intercourse in a private residence can be considered "common knowledge." *See id.* at *3; *see also Delk*, 523 S.E.2d at 833 (holding that the possible emotional impact of a determination of HIV status was common knowledge).

  ii. <u>Outrageousness</u>

"[T]he term 'outrageous' does not objectively describe particular acts but instead represents an evaluation of behavior." *Almy,* 639 S.E.2d at 187. The behavior in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted). The conduct in question must rise above the level of being merely "insensitive and demeaning." *See Harris v. Kreutzer,* 624 S.E.2d 24, 34 (Va. 2006).

Plaintiffs allege that both Cline's videotaping of the intimate encounter between the Plaintiffs in Williams's home and The Agency's subsequent distribution of the video and a field report describing the video was outrageous. (Compl. ¶¶ 31, 37). This was not a case of mere verbal abuse or insensitive conduct. *See Harris,* 624 S.E.2d at 34. It is clear that, at the

6

very least, The Agency's surreptitious videotaping of Plaintiffs engaged in an intimate affair in the sanctity of Williams's private residence amounts to outrageous conduct that is "utterly intolerable in a civilized community." *See Harris,* 624 S.E.2d at 34.

        iii. <u>Causation</u>

To satisfy the element of causation, a plaintiff must plead that the defendant's outrageous conduct was the actual cause of the distress. *See Almy,* 639 S.E.2d at 187–88. Plaintiffs allege that Cline's videotaping was the cause of their emotional distress. (Compl. ¶¶ 33, 39). Thus, this element is met.

        iv. <u>Severity</u>

Finally, to sustain an IIED claim, the emotional distress allegedly caused by the defendant's outrageous conduct must have been severe. *See Supervalu*, 666 S.E.2d at 343. The requisite emotional distress must be "the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Russo v. White,* 400 S.E.2d 160, 163 (Va. 1991); *see also Harris,* 624 S.E.2d at 34 (internal quotation marks omitted). However, pursuant to Federal Rule of Civil Procedure Rule 8, Plaintiffs need not plead emotional distress with the particularity required in Virginia courts. *Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005). Relatively simple allegations of emotional distress are sufficient to meet this requirement, but the distress must nonetheless still be severe. *Perk v. Worden*, 475 F. Supp. 2d 565, 571 (E.D. Va. 2007) (citing *Hatfill*, 416 F.3d at 337).

Williams claims that, as a result of The Agency's actions, she suffered severe emotional distress, is constantly terrified that she is being watched by people outsider her home, is constantly checking the blinds in her home, has come to hate her home, and is

moving to a new location. (Compl. ¶ 32). Marsh claims that as a result of The Agency's actions, he suffered severe emotional distress, is constantly terrified that Williams is being watched by people outside of her home, and is constantly checking the blinds when he is in Williams's home. (Compl. ¶ 38).

In *Hatfill*, the Fourth Circuit held that a plaintiff had sufficiently pled the necessary element of "severe emotional distress" where he alleged "severe and ongoing loss of reputation and professional standing, loss of employment, past and ongoing financial injury, severe emotional distress and other injury, and grievous emotional distress." *Hatfill*, 416 F.3d at 337. As in *Hatfill*, Plaintiffs' allegations of "severe emotional distress" and paranoia are sufficient to meet the pleading standards of Rule 8.

### IV. CONCLUSION

For the above reasons, the Court GRANTS the Motion to Dismiss as to Counts I and II of Plaintiffs' Complaint and DENIES the Motion as to Counts III, IV, and V.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record. An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___6th_____ day of February 2014.